ASBURY PARK ELECTRIC SUPPLY COMPANY, RESPONDENT, v. ORMOND MEGILL, IMPLEADED, ETC., APPELLANT.

Argued January 20, 1926—Decided May 11, 1926.

Joint acceptor of a bill of exchange, blank as to the amount at the time he signed the acceptance, *held* not liable to drawer in a case where such acceptor expressly limited the authority of his co-acceptor to fill in the amount prior to delivery to drawer, and such limitation was made known to drawer before delivery.

On appeal from the District Court.

For the appellant, *Harry R. Cooper.*

For the respondent, *Joseph R. Megill.*

The opinion of the court was delivered by

PARKER, J.   The suit is on a bill of exchange in the special form now popularly known as a "trade acceptance," and is by the drawer against the drawees, Victor Hamilton and Ormond Megill. There was a judgment against both. Megill appeals; Hamilton does not. The controversy arises out of the fact that when the paper was to be delivered to the plaintiff with the signatures of acceptance, there was no amount stated, and the amount was filled in by Hamilton over his own and Megill's signature to a blank form. The situation came about in this way: Hamilton owed the plaintiffs for goods sold, something like $150; he wished to buy more on credit. Plaintiff refused credit unless there was a trade ac-

ceptance with an additional signature. Hamilton asked Megill to sign, and Megill agreed, but stipulated with Hamilton that the amount to be filled in should not exceed $60. Megill signed as shown on the copy set below, and Hamilton went with the paper to see Mr. Jones, president of plaintiff. The state of the case shows that—

"The new goods which Hamilton sought were to cost in the neighborhood of $60, but with the old account the full amount which he would owe to the plaintiff after the purchase of the goods was $209.16. Jones requested that the note be filled in for this amount. Hamilton objected to this and stated that Megill did not wish the note filled up for more than the cost of the new goods. The plaintiff, however, refused to sell materials or to extend any further credit unless the trade acceptance was filled in for the full indebtedness due. Hamilton then filled in the trade acceptance for the full amount which he owed to the company, aggregating in all $209.16, the amount for which suit was brought in the case."

The document as thus completed reads as follows:

"No.. ..                                    Jan. 28, 1925.
To Victor Hamilton and Ormond Megill, Belmar, N. J.

On Feb. 28, 1925, pay to the order of Asbury Park Electric Supply Co., two hundred and nine 16/100 dollars [$209.16].

The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The drawee may accept this bill payable at any bank, banker or trust company in the United States which he may designate.

Accepted at    .on.   .19    with interest at 6% from date.
Payable at Belmar 1st National Bank.
Bank location Belmar, N. J.
Buyer's signature Victor Hamilton
By agent or office Ormond Megill.
                                    ASBURY PARK ELECTRIC SUPPLY CO.,
                                            By Joseph Y. Jones, Pres.
[Endorsed] Asbury Park Elect. Supply Co.
Joseph Y. Jones, Pres."

Megill is called in the state of the case an "endorser," but on the face of the paper he cannot be anything but a drawee and acceptor. It will be observed that the draft is addressed to Victor Hamilton and Ormond Megill, and after the words "accepted  *  *  *  payable at," &c., appears "buyer's signature Victor Hamilton.  By agent or office Ormond Megill," after which comes the signature of drawer, and the endorsement is on the back, where it should be.  When it is considered that both Hamilton and Megill are drawees, and that the natural and normal place for an acceptor's signature is across the face of the bill (*Rand. Com. Paper,* § 5), and that the signature of Megill appears nowhere else, we think he must necessarily be classed as a joint acceptor.  The words "by agent or office" are merely part of a printed form and should be disregarded.

We have thought it proper to note this point, although it is not the crux of the case.  The decision, in our estimation, turns on section 14 of the Negotiable Instruments act (*Comp. Stat., p.* 3736), which reads as follows:

"Where the instrument is wanting in any material particular, the person in possession thereof has a *prima facie* authority to complete it by filling up the blanks therein; and a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a *prima facie* authority to fill it up as such for any amount in order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up stricty in accordance with the authority given and within a reasonable time; but if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

It seems quite clear that the plaintiff is not a "holder in due course," for by the language defining such holder (*Comp. Stat.,* 3741, § 52), he is a person to whom the instrument

JANUARY TERM, 1926.          499

*102 N. J. L.*    Hare & Chase, Inc., v. Gassner & Ackerly, &c.

has been "negotiated;" and a bill of exchange cannot be said to be "negotiated" to a drawer signing it and payee named therein any more than a note or check is "negotiated" to its payee. Consequently, as Megill "became a party" to the bill "prior to its completion" it must have been "filled up strictly in accordance with the authority given." Plainly, it was not so filled up, and not only this, but Jones, representing the plaintiff, knew it was not so filled up, and insisted on the insertion of an amount which he was told Megill was unwilling to assume. Consequently, as against Megill, it was by the plain intendment of the statute unenforceable.

These considerations lead to a reversal of the judgment as to Megill. As the judgment against Hamilton has not been brought here, the cause will be remanded to the District Court with instructions to enter judgment in favor of Megill, the judgment against Hamilton to stand.